JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**10 CV 715**

-----------------------------------------------------------X
JANE DOE, a pseudonym for an unidentified Plaintiff,

                        Case No.:

          Plaintiff,

RECEIVED
JAN 29 2010
U.S.D.C. S.D.N.Y.
CASHIERS

-against-

                        COMPLAINT

MERRILL LYNCH, PIERCE, FENNER & SMITH,
INCORPORATED, MERRILL LYNCH & CO., INC.,
and BANK OF AMERICA CORPORATION,

                        JURY TRIAL DEMANDED

          Defendants.
-----------------------------------------------------------X

        Plaintiff, JANE DOE, a pseudonym for an unidentified Plaintiff, by and through her attorneys, CIARELLI & DEMPSEY, respectfully alleges the following against the Defendants, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, MERRILL LYNCH & CO., INC., and BANK OF AMERICA CORPORATION, as follows:

### PRELIMINARY STATEMENT

    1.    This is a civil action brought by the Plaintiff, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.; and Article 15 of the New York State Executive Law (Human Rights Law), as amended, for unlawful discriminatory practices relating to employment on account of the Plaintiff's sex and intentional and negligent infliction of emotional distress. The jurisdiction of this Court is invoked to secure the protection, and redress the deprivation, of rights guaranteed by federal and state law, which provide for injunctive and other relief for illegal discrimination in employment on account of sex.

2. Plaintiff seeks declaratory and injunctive relief, lost pay and benefits, compensatory and punitive damages, costs with interest, and legal fees, based on the Defendants' violations of the Plaintiff's statutory rights to equal employment opportunity.

3. This civil action is also brought, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201 et seq., to remedy the Defendants' egregious violations of FLSA's wage and hours provisions

4. Pursuant to the FLSA, Plaintiff seeks declaratory and injunctive relief, unpaid overtime compensation due her, liquidated damages due to the Defendants' willful failure to pay said overtime compensation, reasonable attorneys fees, together with the costs of this action, as well as pre-judgment and post-judgment interest.

## JURISDICTION AND VENUE

5. This Court has pendent jurisdiction over all claims made, pursuant to the New York State Executive Law (Human Rights Law), the New York State Labor Law, and other relevant New York statutes.

6. All conditions precedent to the filing of this action have been satisfied, in that the Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission, and has met all administrative prerequisites for the bringing of this action. This action is being filed within ninety days of the Plaintiff's receipt of the U.S. Equal Employment Opportunity Commissions Notice of Right to Sue, issued on December 23, 2009.

7. Venue is appropriate in the Southern District of New York because the Plaintiff worked at Defendants' offices, located at 4 World Financial Center, 250 Vesey Street, North Tower New York, New York 10080, and the claims arose as part of, and pursuant to, her employment with the Defendants.

## THE PARTIES

8. The Plaintiff is an adult female, and a citizen of the United States, who currently resides in the City of New York, County of New York, State of New York, and Southern District of New York. This action is commenced, pursuant to *Sealed Plaintiff v. Sealed Defendant*, 537 F. 3d 185 (2nd Cir. 2008), using a pseudonym for the Plaintiff, in order to protect her identity since she is a victim of a sex crime as set forth herein; her identity is known to the Defendants, and the Plaintiff's privacy rights are superior to the public's interests in disclosure of her identity.

9. At all relevant times herein, the Plaintiff was a "covered" employee of the Defendants within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 210 et seq.

10. Upon information and belief, at all times mentioned herein, the Defendants, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, and MERRILL LYNCH & CO., INC., collectively hereinafter referred to as "Merrill Lynch," were, and still are, publicly-traded financial services corporations, organized under the laws of Delaware, with offices located at 4 World Financial Center, 250 Vesey Street, North Tower, New York, New York 10080. Merrill Lynch is one of the world's leading companies engaging in wealth-management, capital market activity, and corporate and individual advisory services. Merrill Lynch, is, and was, the Plaintiff's employer as defined by FLSA.

11. Upon information and belief, at all times mentioned herein, the Defendant BANK OF AMERICA CORPORATION, hereinafter referred to as "BOA," was, and still, is a publicly-traded financial services corporation, one of the largest in the world, organized under the laws of Delaware, with its headquarters office located at Bank of America Corporate Center, 100 North Tryon Street, North Carolina, 28255. The Defendant BANK OF AMERICA, is, and was, the Plaintiff's employer as defined by the FLSA.

overtime. At the same time, the Defendants uniformly employ men in positions as brokers, traders, and analysts, in order to compensate them with higher earnings and bonuses.

### CLAIM I: VIOLATION OF TITLE VII, 42 U.S.C. SECTIONS 2000e-5

43. The Plaintiff repeats, realleges, and reasserts, the allegations in the preceding paragraphs numbered "1" through "42" as if fully set forth at length herein.

44. As a result of the Defendants' assault, both verbal and physical, and the disparate treatment and harassment of the Plaintiff, subjecting her to a sexually hostile work environment, all on account of her sex, the Defendants discriminated against the Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended.

45. As a result of the Defendants' disparate treatment and harassment of the Plaintiff, the Plaintiff has experienced, and continues to experience, mental and physical anguish, physical illness, loss of self-respect and humiliation, and pain and suffering.

46. As a result of the Defendant's wrongful treatment of the Plaintiff, she will suffer lost income and lost fringe benefits, including but not limited to, health and pension benefits in the future.

### CLAIM II: VIOLATION OF TITLE VII, 42 U.S.C. SECTIONS 2000e-5

47. The Plaintiff repeats, realleges, and reasserts, the allegations in the preceding paragraphs numbered "1" through "42" as if fully set forth at length herein.

48. As a result of the Defendant's disparate, unfair treatment and harassment of the Plaintiff, the Plaintiff has experienced, and continues to experience, mental and physical anguish, physical illness, loss of self respect, humiliation, and pain and suffering.

12. Upon information and belief, in January 2009, BOA purchased Merrill Lynch, which is now a wholly-owned subsidiary of BOA, while Merrill Lynch's offices remain at the same above location. By this acquisition, BOA became the largest wealth-management business in the world.

13. Upon information and belief, all Defendants, were, and still are, employers operating in New York County, New York, at the time the acts of discrimination occurred, and employers within the meaning of 42 U.S.C. §2000e (b), in that at all times relevant hereto, they employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding, calendar year.

14. Upon information and belief, the Defendants are at present, and have been at all times relevant to this action, "enterprises" as defined by the FLSA, employing over thirty (30) Senior Specialists at the Merrill Lynch offices in New York County.

15. Upon information and belief, at all times relevant to this action, the Defendants have engaged, and continue to be engaged, in interstate commerce, and their gross volume of sales or business conducted was not less than Five Hundred Thousand ($500,000.00) Dollars per year.

## STATEMENT OF FACTS

16. In August 2006, the Plaintiff was first employed, as a temporary employee, by Merrill Lynch, and thereafter on January 16, 2007, promoted to a permanent position of Senior Specialist in Merrill Lynch's Global Equity Markets Group (the "Group"). Throughout the Plaintiff's tenure at Merrill Lynch, she was assigned to the Equity Research Sales Desk, and worked at 4 World Financial Center, 250 Vesey Street, North Tower, New York, New York 10080. The Plaintiff remains employed by the Defendants on administrative leave.

4

17. Senior Specialists, including the Plaintiff, provide administrative support for the sales staff including booking travel, recording expenses and ensuring reimbursement and scheduling sales events with Merrill clients referred to as "road shows."

18. As a Senior Specialist, the Plaintiff does not have any supervisory authority or discretion relating to her respective job duties and responsibilities. Senior Specialists, including the Plaintiff, must follow and abide by the company's established procedures and policies, without deviation, and may not act without prior approval of supervisory and managerial employees.

19. The Plaintiff received "near excellent" year-end evaluations in 2007 and 2008, and earned a merit raise and bonus in 2007. In 2008, she received a reduced bonus, while her salary level remained the same, as with many Merrill Lynch employees, as a result of lower profits. The Plaintiff's immediate supervisor was Merrill Lynch Director Robert Lamprecht.

20. In the Group, there were approximately fifty (50) employees, of which there were approximately twelve (12) female employees, four (4) or five (5) of whom who were in their twenties and employed as Senior Specialists. These Senior Specialists worked, on average, 55 to 65 hours per week. There are approximately twelve (12) Managing Directors, and eight (8) Directors, in the Group, all of whom are male.

21. Upon information and belief, the Defendants almost exclusively employ women as Senior Specialists to work in their various offices in New York; and as such, employ them as support staff. The Defendants underpay all of these female Senior Specialists by improperly classifying their respective title of "Senior Specialist" as "exempt," in order to avoid paying these employees overtime wages in according with federal and state law. The Plaintiff worked 70 to 75 hours on average per week throughout her employment at Merrill Lynch, and during this same period never received compensation for the hours she worked in excess of forty hours per week

22. Upon information and belief, the Defendants have intentionally failed to accurately maintain records reflecting all the number of hours worked by the Plaintiff, as well as other female Senior Specialists.

23. Throughout the time the Plaintiff was employed by Merrill Lynch, the Plaintiff and other members of the female support staff, were regularly, and openly, subjected to inappropriate comments and sexually suggestive remarks about their dress and attire by male employees, all of whom occupy superior positions to these women. As an example, at the end of 2006 or early 2007, the Plaintiff received an AOL instant message (AIM), from a male Merrill Lynch trader, whom she was aware had stared at her earlier that day when she was wearing a black dress. In his message, this male trader wrote: "Is everything under your dress black as well?" The Plaintiff was insulted, humiliated and intimidated by this uninvited and unwelcome, crude remark.

24. The Defendants' male employees, including Merrill Lynch Managing Director Patrick Doyle, who was assigned to the Merrill Lynch's Asia Trading Sales Desk, and Merrill Lynch Managing Director Jeffrey Tewlow, who headed Merrill Lynch's Latin America Research Trading Sales and Desk, which adjoined the Plaintiff's work area, throughout a typical workday, constantly uttered profanities, including the "c_ _ _" word, in loud, vulgar, and disruptive tones. The use of this profane and inappropriate language was standard behavior for these male employees. This profane language was expressed out loud, in outbursts, with the knowledge and apparent authorization of supervisory personnel. It defined the workplace, and rendered it, hostile and abusive. Paradoxically, only after a complaint was made by a male employee, did other male employees receive a warning not to use such language. Thereafter, a "Curse-Jar," also referred to by the male employees as the "C-Jar," was then prominently displayed on the trading floor, with the knowledge and acquiescence of Merrill Lynch Managing Director Richard Bosely, who headed Merrill Lynch's Asia Research Sales Desk. The

6

location and presence of the Jar then became the "office joke," to the male employees, and was used for the deposit of money for each instance when male employees used the "C" word or other profanities. The jar was always being filled, as the men's inappropriate language continued unabated, and uncorrected. After the complaint about the men's profane language had been made, and became known, Kenneth Kim, a Merrill Lynch Director ("Director Kim"), confronted the Plaintiff directly, as well as other female Senior Specialists, in an accusatory matter. Director Kim demanded, in a threatening and intimidating tone, to know whether the Plaintiff or any of her female co-workers were responsible for "ratting (his desk) out" about their regular use of profane and inappropriate language. After his own involvement with the creation of the "C-Jar" became known to Merrill Lynch's legal counsel, Managing Director Bosley was promoted to head Merrill Lynch's Global Asia-Pac Research and Sales Division.

25. In June 2008, at a Merrill Lynch business conference held in California, Merrill Lynch Managing Director Patrick Doyle physically grabbed the buttocks of a female Merrill Lynch Associate, in full view of Merrill Lynch clients and other employees. The female Associate complained to the Plaintiff of this assault, but told her she was too humiliated to make a formal complaint. Instead, this female employee was forced to avoid Merrill Lynch's Managing Director Doyle for the rest of the conference, as well as her remaining tenure at Merrill Lynch, before she was fired in February 2009. After the assault of this Merrill Lynch, female, subordinate employee was made known to Merrill Lynch's legal counsel, Managing Director Doyle was promoted to head Merrill Lynch's Asia Research Sales Desk.

26. During the summer of 2007, the Plaintiff was advised by Merrill Lynch Director Richard Davidson not to make complaints of any nature to Merrill Lynch's Human Resources or Personnel Departments, because supervisory personnel did not want "heat on the desk" due to Merrill's suffering of economic losses.

27.     At the entrance to the Plaintiff's work floor, there is a food service area, commonly referred to as "the Canteen," operated by three men as outside vendors. Two of these workers routinely taunt, tease, and address, the Plaintiff, as well as other female Merrill Lynch employees, with comments such as "Oh, baby"; "Looking good," and "I can't concentrate with you in that skirt!" These open, sexual remarks serve to demean and insult the Plaintiff and her female co-workers. The remarks are made daily, openly, and in the presence of senior, male Merrill Lynch employees, none of whom took any action to discourage, or stop them. Exposed to this continuous conduct, the Plaintiff was forced for the most part, to use the restroom facilities one floor up from her floor, rather than the facilities on her floor near the Canteen. The Plaintiff was further forced, to walk around the Perimeter of the entire trading floor to enter and exit the floor by the elevator, rather than take a direct route by the Canteen. These insulting, degrading comments were made to the Plaintiff more than once in front of the Plaintiff's male supervisors, none of whom took any action to stop or correct this conduct.

28.     The Plaintiff complained about the sexual taunts by the Canteen workers to Merrill Lynch Managing Director Christian Howes, describing them to him as her "daily humiliation." Director Howes failed to take any action, and instead only advised the Plaintiff to "confront" the "Canteen men" herself. The Plaintiff was afraid to do so out of fear of reprisal by these men, and her male Supervisors.

29.     The Defendants' workplace practice includes conducting business at, and within, alcohol-infused settings. These venues are such a part of Defendants' office practice, that after the Plaintiff had discussed, by email, a matter of business concern with Merrill Lynch Managing Director David Clark, he advised her by email: "Have a drink," a common refrain of male employees at the Defendants' New York office.

30.     The Defendants' business was regularly conducted by its supervising and other male employees in a bar, P. J. Clarke's ("P.J. Clarke's"), along with three other bars, situated on the floor-

8

level of the office building in which the Plaintiff worked. These bars are regarded and used by Merrill Lynch employees, including supervisory employees, as an extension of the workplace. During the summer of 2008, when Brent Clapacs, Merrill Lynch Managing Director of International Sales and Trading, arrived at the Plaintiff's office, Merrill Lynch subordinate employees, including the Plaintiff, were directed to meet Managing Director Clapacs at P.J. Clarke's. Once there, rounds of tequila were ordered by Merrill Lynch Managing Director Jon Renert of the Japan Desk, and consumed by Managing Director Clapacs, along with the subordinate employees present. This bar "event" was the only opportunity extended to these subordinate Merrill Lynch employees to meet with Managing Director Clapacs, which meeting was recognized by all in Plaintiff's office to be an important networking-career opportunity.

31.  In the Fall of 2006, and again in early May, 2008, Director Kim attempted to kiss the Plaintiff at work-related, off-premises events. The Plaintiff rebuffed both advances, which she considered unwelcome and inappropriate. In September or October 2008, Director Kim emailed the Plaintiff during work hours, making a sexually suggestive and inappropriate message; i.e., "You will have to settle for Number 2." This was his response to the Plaintiff's email inquiring if he had seen another Merrill Lynch Director. In response, the Plaintiff complained directly to Director Kim about this inappropriate remark. He responded, cavalierly: "It was a joke," and failed to apologize. Director Kim's sexually aggressive behavior toward the Plaintiff was typical of the conduct of many male employees.

32.  On October 21, 2008, the Plaintiff went to P.J. Clarke's in the company of other employees from her office, along with her immediate Supervisor, Merrill Lynch Director Lamprecht, as well as Managing Director Bosley, Director Simon Davey, Director Kim, and other Merrill male Lynch Managing Directors and Directors. During this event, the Plaintiff sat at the bar stool next to Director

Lamprecht, who bought the Plaintiff a beer, and discussed Merrill Lynch business, in general, with her. He also "previewed" the Plaintiff's upcoming year-end evaluation, in particular. The event continued when the Plaintiff and another female Merrill Senior Specialist left P.J. Clarke's, accompanied by Director Kim and another Merrill Lynch male Director, it continued, until later when Director Kim raped the Plaintiff.

33. The day after the rape, on October 22, 2008, Director Kim called the Plaintiff and advised her that he did not intend to inform a male Merrill Lynch Director, with whom the Plaintiff and he both worked, that he ("Kim") "had [the Plaintiff]."

34. On October 23, 2008, as he entered the Merrill Lynch offices, Director Kim was arrested for Rape by New York City Police Department detectives. Thereafter, Director Kim was indicted for Rape by a New York County Grand Jury.

35. After her rape, Samuel Kim, of Merrill Lynch's Korea Sales Desk, no relation to Director Kim, but his close friend, emailed the Plaintiff twice, using two Merrill Lynch-supported email accounts, urging her to contact Director Kim directly. These activities by Samuel Kim represented intimidation and harassment. Upon information and belief, these contacts were instigated by Director Kim, and constitute acts of retaliation by the Defendants' male employees.

36. The Plaintiff promptly advised Merrill Lynch of her rape by Director Kim, and was placed on medical leave. The Plaintiff subsequently learned that Merrill Lynch conducted no investigation into the workplace environment or Director Kim's conduct upon receipt of her report. In fact, Merrill Lynch's legal counsel insisted Director Kim, and the other members of its Asia Research Sales Desk, were "perfect gentlemen," even after receiving knowledge of the attack, and the criminal indictment stemming from such attack. Merrill Lynch, in response to the Plaintiff's filing a complaint with the EEOC conducted a cursory, incomplete, and self-serving investigation, failed to take any

corrective action, or develop any plan, to permit the Plaintiff to return to work without fear of Director Kim's return, or reprisals by him and fellow male employees. On information and belief, on receipt of the Plaintiff's complaint, Merrill Lynch placed Director Kim on paid administrative leave, which was planned to allow him to return to work at his desk, only ten feet from the Plaintiff's desk.

37. On November 5, 2009, in the New York State Supreme Court for New York County, Director Kim pled guilty to the crime of Coercion in the Second Degree in satisfaction of the rape charge. Director Kim admitted, under oath, that on October 21, 2008, he had compelled the Plaintiff to engage in conduct against her will by instilling in her the fear that if she did not comply with his demand, he would cause her physical injury.

38. The Defendants have failed, and continue to fail, to correct or prevent the sexually charged, hostile work environment to which the Plaintiff was subjected.

39. The Defendants have failed, and refused, to guard against misconduct by their male supervisory employees, by failing to adequately train and monitor their conduct toward female subordinate employees.

40. The Defendants have failed to maintain or communicate an effective anti-harassment policy, take appropriate actions to eliminate sexual harassment, and improve the working conditions for their female employees.

41. The Defendants' failure to supervise and monitor the conduct of their male brokers and sales traders, as well as Directors and Managing Directors, contributes to a work environment that is sexually intimidating, hostile, and otherwise offensive, to the Plaintiff and other female employees.

42. The Defendants have failed to pay the Plaintiff, and the other female Senior Specialists, overtime, and properly classify these female employees, in order to deny them the right to collect

49. As a result of the Defendants' disparate and unfair treatment of the Plaintiff, the Plaintiff will suffer lost income and lost fringe benefits, including, but not limited to, health and pension benefits in the future.

### CLAIM III: VIOLATION OF FLSA

50. The Plaintiff repeats, realleges, and reasserts, the allegations, in the preceding paragraphs numbered "1" through "42" as if fully set forth at length herein.

51. At all times relevant to this action, the Defendants were "employers," as defined in 29 U.S.C. §203(d).

52. At all times relevant to this action, the Plaintiff was "employed" by the Defendants, as defined by 29 U.S.C. §203(g).

53. At all times relevant to this action, the Defendants willfully failed to maintain and document accurate records of the Plaintiff's hours worked, and failed to pay the Plaintiff overtime compensation for each hour she worked in excess of forty (40) hours in a work week, in violation of 29 U.S.C. §207.

54. Section 13 of the FLSA, 29 U.S.C. §213, exempts certain categories of employees from the obligation to pay overtime compensation, as set forth in Section 7(a)(1). None of these exemptions apply to the Plaintiff.

55. The Plaintiff is entitled to damages equal to the mandated overtime premium pay for the three (3) years preceding the filing of this complaint, plus periods of equitable tolling, because the Defendants acted willfully, and knew, or displayed reckless disregard for, whether their conduct was prohibited by Section 6(a) of the Portal-to-Portal Pay Act, as amended, 29 U.S.C. Section 255(a).

56. As a result of the Defendants' willful violations of the Fair Labor Standard Act, the Plaintiff is entitled to recover from the Defendants amounts to be proved at trial for her unpaid overtime

wages, plus an additional amount as liquidated damages, reasonable attorneys fees, costs of this action, and pre-judgment and post-judgment interest, pursuant to 29 U.S.C. Section 216(b).

## PENDENT STATE CLAIMS

### VIOLATION OF NEW YORK STATE EXECUTIVE LAW (HUMAN RIGHTS LAW)

57. Plaintiff repeats, realleges and reasserts, the allegations contained in the preceding paragraphs numbered "1" through "42" as if fully set forth at length herein.

58. The Defendants have continuously discriminated against the Plaintiff in her employment on account of her sex, by treating her in a disparate fashion, and subjecting her to a sexually hostile work environment, which actions were at that time intentional, discriminatory, and illegal, all account of the Plaintiff's sex.

59. As a result of the Defendants' discrimination against the Plaintiff in the terms and conditions of her employment, on account of her sex, the Plaintiff was sexually harassed, and subjected to a hostile work environment, based on which, the Plaintiff suffered serious medical and psychological problems; was damaged in her present and future employment opportunities; and experienced, and continues to experience, mental and physical anguish, and pain and suffering.

### VIOLATION OF NEW YORK STATE LABOR LAW

60. The Plaintiff, repeats, realleges, and reasserts, the allegations contained in the preceding paragraphs numbered "1" through "42" as if fully set forth at length herein.

61. Under the State of New York's Labor Law ("NYLL"), and the New York State Department of Labor Regulations, the Defendants were required to pay the Plaintiff time and one half of her regular hourly rates for all hours she worked in excess of forty hours per week.

14

62. The Defendants failed to pay the Plaintiff the overtime wages to which she was entitled under the NYLL, and by failing to do so, violated NYLL, Articles 6 and 19, and their implementing regulations, 12 N.Y.C.R.R. Sections 138-2 et seq.

63. The Defendants willfully violated the NYLL, by knowingly and intentionally failing to pay the Plaintiff the correct amount of her earned overtime wages.

64. Based on the Defendants' willful violations of the NYLL, the Plaintiff is entitled to recover her unpaid overtime wages, reasonable attorneys fees, the costs of this action, and pre-judgment and post-judgment interest.

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

65. The Plaintiff, repeats, realleges, and reasserts, the allegations contained in the preceding paragraphs "1" through "42" as if fully set forth at length herein.

66. The above-described actions of the Defendants were extreme and outrageous; were undertaken with the intent to cause the Plaintiff severe emotional distress; or were the result of negligent supervision.

67. Such extreme and outrageous acts did in fact cause the Plaintiff severe emotional distress.

68. As a proximate result of extreme and outrageous acts, Plaintiff has experienced pain, suffering, severe emotional distress, mental distress, shame, humiliation, embarrassment, and related physical ailments.

69. As further proximate result of such conduct, the Plaintiff has suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be proved at trial.

15

70. The Defendants' act alleged herein are malicious, oppressive, fraudulent, despicable, and in conscious disregard of each of the Plaintiff's human and civil rights. As such, punitive damages are warranted.

WHEREFORE, the Plaintiff prays that this Court will grant a judgment in her favor as follows:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this complaint, violated the Plaintiff's rights under Title VII, 42 U.S.C. §2000e et seq., and Article 15 of the New York State Executive Law (Human Rights Law);

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for lost pay in the amount of the wages and any and all fringe benefits it is determined that the Plaintiff has lost as a result of the defendants' unlawful and discriminatory conduct, together with interest;

D. Enter judgment in favor of the Plaintiff, and against the Defendants, for compensatory and punitive damages, including, but not limited to, damages for the plaintiff's pain and suffering, mental and physical anguish, humiliation, and loss of self respect, together with interest;

E. Award Plaintiff reasonable attorneys' fees together with the costs of this action;

F. Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, prevent their recurrence in the future, and protect other female employees of the Defendants from such similarly unlawful behavior;

G. Declare the Defendants' conduct, as set forth herein, to violate the Plaintiff's rights guaranteed by the FLSA and the NYLL;

H.  Award the Plaintiff unpaid overtime compensation due, in accordance with the FLSA and NYLL, and an additional amount as liquidated damages, based on the Defendants' willful failure to pay the Plaintiff overtime wages, pursuant to 29 U.S.C. Section 216(b);

I.  Award the Plaintiff the costs of this action and reasonable attorneys fees, pursuant to Section 29 U.S.C. Section 216(b), and the NYLL;

J.  Award the Plaintiff pre-judgment and post-judgment interest; and

K.  And for other and further relief as to the court may deem just and proper.

Dated: Riverhead, New York
January 27, 2010

CIARELLI & DEMPSEY
Attorneys for the Plaintiff

By: *Patricia A. Dempsey*
PATRICIA A. DEMPSEY (PD6807)
737 Roanoke Avenue
Riverhead, New York 11901
(631) 369-5100
ciarellidempsey@optonline.net

*Michael T. Cornacchia*
MICHAEL T. CORNACCHIA (MC2444)
Of Counsel
260 Madison Avenue, 22nd Floor
New York, New York 10016
(646) 278-4297
mcornacchia@mtclegal.com

17

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all facts raised in this Complaint.

Dated: Riverhead, New York
January 27, 2010

Respectfully submitted,

CIARELLI & DEMPSEY
Attorneys for Plaintiffs

By: *Patricia A. Dempsey*
PATRICIA A. DEMPSEY (PD6807)
737 Roanoke Avenue
Riverhead, New York 11901
(631) 369-5100
ciarellidempsey@optonline.net

MICHAEL T. CORNACCHIA (MC2444)
Of Counsel
260 Madison Avenue, 22nd Floor
New York, New York 10016
(646) 278-4297
mcornacchia@mtclegal.com

## FAIR LABOR STANDARDS ACT CONSENT

I, Jane Doe, consent to be a party Plaintiff, in <u>Jane Doe, a pseudonym for an unidentified Plaintiff v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated, et al</u>. in order to seek redress for violation of the Fair Labor Standards Act, pursuant to 29 U.S.C. Section 216(b).

_____
Jane Doe

The Plaintiff has executed a Fair Labor Standards Act Consent in her actual name which will be submitted to the Court and Defendants together with an application for a Protective Order covering its contents.